IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DEMETRUIS DELFON CARTER,       :
                              :
          Plaintiff,          :
                              :
VS.                           :        7:15-CV-13 (HL)
                              :
Warden MARTY ALLEN, *et al.,* :
                              :
          Defendants.         :
_____:

## RECOMMENDATION

Plaintiff, proceeding *pro se,* brought the above-styled action pursuant to 42 U.S.C. § 1983 on January 30, 2015. (Doc. 1). Presently pending in this action is Defendants Allen, Anderson, Barber, Sealy, and Westlake's Motion for Summary Judgment. (Doc. 43).

### I. Procedural History

Plaintiff filed his Recast Complaint on March 20, 2015.[1] (Doc. 8). The undersigned reviewed Plaintiff's Recast Complaint, and permitted Plaintiff's retaliation claims against Defendants Allen, Anderson, Barber, Sealy, and Westlake to proceed. (Docs. 8, 12). On January 25, 2016, Defendants filed a Motion for Summary Judgment. (Doc. 43). The Court notified Plaintiff of the Motion for Summary Judgment, and Plaintiff responded on February 19, 2016.[2] (Docs. 44, 48). Defendants replied on March 24, 2016. (Doc. 56). Plaintiff then

---

[1] The Court ordered Plaintiff to recast his Complaint using the standard § 1983 form, and notified Plaintiff that the Recast Complaint would be substituted for Plaintiff's original and amended Complaint. (Doc. 7, p. 2).
[2] The Clerk of Court initially docketed Plaintiff's Response as Plaintiff's Motion for Summary Judgment. (Doc. 48). However, Plaintiff appears to explain in his "Objection to Defendant's Objection" that Document 48 is actually a response to Defendants' Motion for Summary Judgment, not his own Motion for Summary Judgment. (Doc. 51).

filed a Motion to File a Surreply Brief, which the Court granted-in-part.[3] (Docs. 57, 58).

## II. Plaintiff's Allegations

Plaintiff alleges that on March 27, 2014 at Valdosta State Prison (VSP), Defendant Anderson squeezed Plaintiff's buttocks with the intent to humiliate, harass, and degrade Plaintiff. (Doc. 8, p. 4). Plaintiff grieved Defendant Anderson's actions, and the grievance was referred to the Internal Investigations Unit on April 1, 2016. (Doc. 1-1, p. 5).

On April 2, 2014, Defendants Anderson, Barber, Sealy, and Westlake conspired to place a contraband cellphone on Plaintiff to retaliate against Plaintiff for filing the above-mentioned grievance against Defendant Anderson. (Doc. 8, p. 4). Plaintiff alleges that Defendants Barber, Sealy, and Westlake informed Plaintiff that they planted the contraband cellphone because of this grievance. (Doc. 1-1, p. 8).  Defendant Anderson also smiled while observing the interaction between Plaintiff and Defendants Barber, Sealy, and Westlake. (Doc. 1-1, p. 8).

On July 21, 2014, Defendant Allen retaliated against Plaintiff for filing the grievance against Defendant Anderson. (Doc. 8, pp. 5-6). Plaintiff informed Defendant Allen that Plaintiff "felt uncomfortable" allowing Defendant Anderson to search Plaintiff, as Plaintiff previously filed a grievance against Defendant Anderson for "sexual misconduct." (Doc. 1-1, p. 13.) Defendant Allen then became "angry" when Plaintiff mentioned that grievance, and placed Plaintiff in administrative segregation. *Id.*

## III. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[3] The Court's order explained that "the Court construes Plaintiff's Motion itself as a surreply brief, and the Court will consider the arguments made in said brief when issuing its Recommendation as to Defendants' Motion for Summary Judgment." (Doc. 58).

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
>> (A) citing to particular parts of materials in the record,
>> including depositions, documents, electronically stored
>> information, affidavits or declarations, stipulations (including
>> those made for purposes of the motion only), admissions,
>> interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the
>> absence or presence of a genuine dispute, or that an adverse
>> party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed

in the light most favorable to the nonmoving party. *Cruz v. Publix Super Markets*, 428 F.3d

1379, 1382 (11th Cir. 2005).

The movant "always bears the initial responsibility of informing the district court of the

basis for its motion," and identifying those portions of the record, including pleadings, discovery

materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The party seeking summary

judgment bears the burden of demonstrating the absence of a genuine dispute as to any material

fact." *Brown v. Houser*, No. 1:13-CV-1807-WSD, 2015 WL 5228005, at *11 (N.D. Ala. Sept. 4,

2015). Once the movant meets its burden, the non-movant must designate specific facts showing

a genuine issue of material fact. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th

Cir. 1999).

"If a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if

the motion and supporting materials – including the facts considered undisputed – show that the

movant is entitled to it." Fed R. Civ. P. 56(e)(3). "The mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986) (emphasis in original). Rule 56 of the Federal Rules of Civil Procedure allows the Court to consider the entire record when ruling on a motion for summary judgment. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## IV. Evidence

In support of their Motion for Summary Judgment, Defendants submit (1) Plaintiff's deposition transcript; (2) the affidavit of Defendant Allen; (3) the affidavit of Defendant Anderson; (3) the affidavit of Defendant Barber; (4) the affidavit of Defendant Sealy; (5) the affidavit of Defendant Westlake; (6) the affidavit of Carlos Jones; and (7) Plaintiff's grievance history. (Docs. 43-1 — 43-8; 45). In response to Defendants' Motion for Summary Judgment, Plaintiff submits (1) copies of disciplinary reports; (2) the witness statement of inmate Kevin McKay; (3) Plaintiff's sworn affidavit; (4) a memorandum from Shunda Woods; (5) the affidavit of inmate Julio Rodriguez; and (6) Plaintiff's mental health treatment plan. (Docs. 48- 3 — 48-8).

Defendant Allen has been the warden at VSP since February 1, 2013. (Doc. 43-2, Allen Aff., ¶ 2). On April 2, 2014, Defendant Westlake was an assistant supervisor over the "CERT" team at VSP. (Doc. 43-6, Westlake Aff., ¶ 2). Defendants Anderson, Barber, and Sealy are members of the CERT team at VSP. (Doc. 43-3, Anderson Aff., ¶ 2); (Doc. 43-4, Barber Aff., ¶ 2); (Doc. 45-1, Sealy Aff., ¶ 2).

4

*March 27, 2014 Incident*

On March 27, 2014, Defendants Westlake and Anderson conducted a pat search of Plaintiff. (Doc. 43-3, Anderson Aff., ¶ 3). According to Defendant Anderson, Plaintiff refused to let Defendant Anderson pat search him. (Doc. 43-3, Anderson Aff., ¶ 4). Despite Plaintiff's refusal, Defendant Anderson conducted the pat search, and subsequently placed Plaintiff in administrative segregation for insubordination. (Doc. 43-3, Anderson Aff., ¶ 4).

According to Plaintiff, on March 27, 2014, Defendants Anderson and Westlake were conducting pat searches, and Defendant Anderson pat searched Plaintiff, "but in the process of him pat searching [Plaintiff], he grabbed [Plaintiff's] buttocks, and [Plaintiff] told him [Plaintiff] was going to file a grievance on him, and he got angry and placed [Plaintiff] in segregation." (Doc. 43-1, Plaintiff Depo., pp. 20, 28-29). Plaintiff filed a grievance against Defendant Anderson, and told the medical unit he was afraid of additional retaliation. (Doc. 43-1, Plaintiff Depo., pp. 29-30).

In his grievance against Defendant Anderson, Plaintiff asserts that Defendant Anderson squeezed Plaintiff's buttocks in a sexual manner. (Doc. 43-3, Anderson Aff., ¶ 5). The grievance was referred to the Internal Investigations Unit on April 1, 2014. (Doc. 1-1, p. 5). Defendant Anderson states that he did not become aware of the above-mentioned grievance until April 4, 2014, when he was asked to provide a response to the grievance. (Doc. 43-3, Anderson Aff., ¶ 8). Defendant Anderson was cleared of any wrongdoing after an investigation. (Doc. 43-3, Anderson Aff., ¶ 7).

Under the grievance procedure at VSP, an officer does not know that a grievance has been filed against him until his supervisor provides said officer with a request for an answer to the grievance. (Doc. 43-7, Jones Aff., ¶ 3). Carlos Jones, the split shift supervisor at VSP, states that

5

in his experience, it takes between two and three days for an officer to receive a request for an

answer, and there was "no way that Officer Anderson would have known about the grievance the

very next day at 8:00 A.M. in the morning." (Doc. 43-7, Jones Aff., ¶¶ 2, 6-7). Plaintiff has filed

fifteen grievances at VSP since April 2, 2014. (Doc. 43-8).

### April 2, 2014 Incident

Under Defendants' version of the facts, on April 2, 2014, Defendants Barber and Sealy

conducted a shakedown of Dormitory E. (Doc. 43-4, Barber Aff., ¶ 3); (Doc. 45-1, Sealy Aff., ¶

3). CERT team members do not have authority to order shakedowns; only the captain, deputy

warden, and sergeant supervisor can order a shakedown. (Doc. 43-3, Anderson Aff., ¶ 17).

Defendants Barber and Sealy searched Plaintiff's cell and pat searched Plaintiff. (Doc. 43-4,

Barber Aff., ¶¶ 5-6); (Doc. 45-1, Sealy Aff., ¶¶ 5-6).

Defendant Westlake states that he "stood or sat" near a table and talked with Sergeant

Miles or Defendant Sealy during this shakedown. (Doc. 43-6, Westlake Aff., ¶ 4). Defendant

Barber noticed that Plaintiff was carrying a bag with him to the shower, and searched Plaintiff's

bag with a metal wand. (Doc. 43-4, Barber Aff., ¶¶ 6-7); (Doc. 45-1, Sealy Aff., ¶¶ 6-7). The

metal wand "went off" when Defendant Barber moved the wand over Plaintiff's soap dish. (Doc.

43-4, Barber Aff., ¶ 8); (Doc. 45-1, Sealy Aff., ¶ 8). The soap was also "much thicker than the

soap that is used at the prison, and the soap 'rattled'" when Defendant Barber shook it. (Doc. 43-

4, Barber Aff., ¶ 8). Defendant Barber opened the soap dish and found a cell phone hidden inside

of the soap. (Doc. 43-4, Barber Aff., ¶ 9); (Doc. 45-1, Sealy Aff., ¶ 9). A member of the CERT

team brought Defendant Westlake a cell phone that had been found and confiscated from one of

the inmates. (Doc. 43-6, Westlake Aff., ¶ 5).

Plaintiff's version of the events on April 2, 2014 differs from Defendants' version of the

facts. According to Plaintiff, Defendants Barber and Sealy came to Plaintiff's cell, pat searched Plaintiff's roommate, pat searched Plaintiff, and Defendant Barber then used "the wand." (Doc. 43-1, Plaintiff Depo., pp. 33-34). During this time, Defendants Westlake and Anderson were standing by a table. (Doc. 43-1, Plaintiff Depo., p. 34). Defendant Westlake walked over and stood in front of Plaintiff while Defendant Barber was pat searching Plaintiff.  (Doc. 43-1, Plaintiff Depo., pp. 34-35). Defendant Westlake gave Defendant Barber a soap dish that Defendant Westlake had pulled out of his vest. (Doc. 43-1, Plaintiff Depo., pp. 34-35). "He" told Plaintiff, "this is for filing that grievance on Officer Anderson." (Doc. 43-1, Plaintiff Depo., p. 35). Defendant Barber then broke open the soap dish, broke the soap in half, and found a cell phone. (Doc. 43-1, Plaintiff Depo., p. 35). While this was happening, Defendant Anderson was standing by the table smiling at Plaintiff. (Doc. 43-1, Plaintiff Depo., pp. 41-42). Once the cellphone was found, Plaintiff was placed in the shower. (Doc. 43-1, Plaintiff Depo., p. 41).

Plaintiff submits the unsworn statement of inmate Kevin McKay. (Doc. 48-4). Affidavits and declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). A declaration must be subscribed under penalty of perjury that the document is true and correct. 28 U.S.C. § 1746. An affidavit must be signed in the presence of a notary public. *Id.* This statement is not admissible evidence, as it does not meet the requirements to qualify as an affidavit or a declaration. Thus, the undersigned will not consider inmate McKay's unsworn statement in deciding Defendants' Motion for Summary Judgment.

Defendant Anderson maintains that he did not plant the cell phone in the bar of soap and order the soap to be placed on Plaintiff. (Doc. 43-3, Anderson Aff., ¶ 15). Defendants Barber and Sealy maintain that they did not plant the cellphone in the bar of soap and order said bar of soap

to be placed on Plaintiff. (Doc. 43-4, Barber Aff., ¶ 10); (Doc. 45-1, Sealy Aff., ¶ 10). Defendant Westlake maintains that he did not plant a cell phone in a bar of soap on Plaintiff, and that he was not aware that Plaintiff filed a grievance against Defendant Anderson at the time of the shakedown. (Doc. 43-6, Westlake Aff., ¶¶ 8-9). Defendants Barber and Sealy also state that they did not know about Plaintiff's grievance at the time of the shakedown. (Doc. 43-4, Barber Aff., ¶ 13); (Doc. 45-1, Sealy Aff., ¶ 13).

Cell phones are considered contraband and inmates are prohibited from having cellphones at VSP. (Doc. 43-3, Anderson Aff., ¶ 12). A disciplinary report was written against Plaintiff for "Possession of a Cell Phone." (Doc. 43-3, Anderson Aff., ¶ 13). Plaintiff attended a hearing regarding the contraband phone. (Doc. 43-1, Plaintiff Depo., p. 47). Plaintiff was found guilty at this hearing. (Doc. 43-1, Plaintiff Depo., p. 48). As a result of this incident, Plaintiff's security was raised to "close," which means he is in a close security facility with more violent inmates, can attend the law library only once per week, has more controlled movements with escorts, and cannot go on the "big yard" unless he is participating in sports. (Doc. 43-1, Plaintiff Depo., pp. 44-46).

### July 21, 2014 Incident

On July 21, 2014, Defendant Allen was inspecting Plaintiff's dorm, and told Defendant Anderson to pat search the "whole top range." (Doc. 43-1, Plaintiff Depo., p. 49). Plaintiff allowed Defendant Anderson to pat search him. (Doc. 43-1, Plaintiff Depo., p. 50). Plaintiff then asked for permission to speak to Defendant Allen, and told Defendant Allen that he filed a prior grievance against Defendant Anderson, and that Plaintiff did not feel comfortable with Defendant Anderson touching him. (Doc. 43-1, Plaintiff Depo., pp. 49-50). Defendant Allen "got angry and ordered [Plaintiff] placed in segregation." (Doc. 43-1, Plaintiff Depo., p. 49).

8

Defendant Allen did not file disciplinary charges against Plaintiff. (Doc. 43-1, Plaintiff Depo., p. 50).

According to the affidavit of inmate Julio Rodriguez, Defendant Allen ordered Defendant Anderson to pat search the top range, and when Defendant Allen approached Plaintiff, Rodriguez heard Plaintiff ask to speak to Defendant Allen. (Doc. 48-7). Rodriguez heard Plaintiff "tell Warden Marty Allen that he had [filed] a prior grievance on Cert Officer Anderson for [inappropriately] touching him sexual misconduct and he felt uncomfortable with him (Cert Officer Anderson) touching him[.] Warden Marty got angry and ordered [Plaintiff] place in the hole[.]" (Doc. 48-7). Defendant Allen does not recall this alleged incident. (Doc. 43-2).

## V. Discussion

In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment because (i) Plaintiff cannot establish a First Amendment Violation; (ii) Plaintiff is barred from recovering compensatory or punitive damages; and (iii) Defendants are entitled to qualified immunity. (Doc. 43-9).

## A. First Amendment Violation

"The commonly accepted formulation [for a retaliation claim] requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "A prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment." *Thomas v. Lawrence*, 421 F. App'x 926, 928 (11th Cir. 2011). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from

the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1250.

Once the plaintiff establishes that his protected conduct was a motivating factor behind any harm, the burden shifts to the defendant. *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011). If the defendant is able to show he would have taken the same action in the absence of the protected activity, he should be awarded summary judgment. *Id.* at 1342.

The parties do not dispute that Plaintiff has satisfied the first element, as filing a grievance against Defendant Anderson was a constitutionally protected act. (Doc. 43-9, p. 9). Instead, Defendants argue that Plaintiff cannot satisfy the second or third elements of his retaliation claim. (Doc. 43-9).

### i. *Second Element: Adverse Effect*

First, Defendants assert that Plaintiff cannot show he suffered adverse action that would deter a person of ordinary firmness from continuing to file grievances. (Doc. 43-9, p. 9). Defendants support this argument with evidence that Plaintiff continued to file numerous grievances after Defendants allegedly retaliated against him. *See Moss v. Gradia*, 2010 WL 337603, at *6 (N.D. Fla. Jan. 21, 2010) ("The Court agrees with the Defendant that the facts simply do not support a finding of adverse effect in that Plaintiff filed six grievances against Defendant Gradia after the alleged retaliation and he was, therefore, not deterred from exercising his personal right to access the courts."); *Robinson v. Owens*, 2014 WL 2617281, at *4 (M.D. Ga. June 12, 2014) ("[T]here is no indication that the allegedly retaliatory conduct 'adversely affected the protected speech' because Plaintiff concedes that he continued to file myriad grievances about the conditions of his confinement and Macon State Prison after the attack."); *Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) ("Mitchell continued to file grievances against Cross, even after she had denied his first grievance, which illustrates that a

person of ordinary firmness would likely not be deterred from engaging in such speech."); *Jinks v. Medlin*, 2015 WL 4716050, at *17 (S.D. Ga. Aug. 7, 2015) ("Indeed, the record shows that Plaintiff continued to file grievances and prosecute his two civil cases even after his visitation privileges were allegedly revoked. Plaintiff filed this very lawsuit on September 13, 2013, after Defendant Medlin purportedly revoked his visitation privileges . . . In the face of those undisputed facts, no reasonable juror could find that a person of ordinary firmness would likely be deterred from engaging in such speech.").

However, the standard used by courts in the Eleventh Circuit is not subjective; a plaintiff need not be actually chilled from exercising his First Amendment rights in order to claim a First Amendment violation. *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).[4] How the inmate acted may, however, be evidence of what a reasonable person would have done. *Johnston v. Young*, 2014 WL 1303653, at *6 (N.D. Fla. March 28, 2014). "[P]lacement in segregation while officials investigate a disciplinary charge is not the type of adverse action that would likely deter a person of ordinary firmness from engaging in such speech. This is especially true here because the segregation status to which Plaintiff was briefly assigned was administrative and not punitive." *Jinks*, 2015 WL 4716050, at *16.

---

[4]

> An objective standard provides notice to government officials of when their retaliatory actions violate a plaintiff's First Amendment rights. In contrast, a subjective standard would expose public officials to liability in some cases, but not in others, for the very same conduct, depending upon the plaintiff's will to fight. It would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. There is no reason to reward government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a *de minimis* inconvenience to her exercise of First Amendment Rights. The ordinary firmness test is therefore protective of the interests of both government officials and the plaintiffs alleging retaliation.

*Bennett*, 423 F.3d at 1251-52 (internal citations and quotation marks omitted).

At least one Court in the Eleventh Circuit declined to grant summary judgment when, "[a]lthough plaintiff was not deterred in this situation, he and at least one other inmate state that they have been personally deterred from pursuing grievances for this reason, and they know of other inmates who have also been so deterred." *O'Bryant v. Finch*, No. 5:05CV111/LAC/MD, 2008 WL 4372867, at *9 (N.D. Fla. Sept. 24, 2008). "Plaintiff's claim satisfies the second element because he alleged that he was subjected to disciplinary confinement for his complaints." *Alvarez v. Sec'y, Fla. Dept. of Corr.*, 2016 WL 1238185, at *6 (11th Cir. Mar. 30, 2016) (citing *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (holding that forty-five days of disciplinary segregation would likely deter a prisoner of ordinary firmness from complaining about the conditions of confinement)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse.").

The evidence shows that Plaintiff filed fifteen grievances at VSP from April 2, 2014, when Defendants Anderson, Barber, Sealy, and Westlake allegedly retaliated against Plaintiff, until November 4, 2015. (Doc. 43-8, p. 2). Thirteen of these fifteen grievances were filed on or after Defendant Allen allegedly retaliated against Plaintiff on July 21, 2014. *Id.* During this time, Plaintiff grieved the following: conditions of confinement; harassment; policy/procedural challenges; assignment/classification; and missing/confiscated property. *Id.*

On the other hand, as a result of the alleged retaliatory placing of contraband on Plaintiff's person by Defendants Anderson, Barber, Sealy, and Westlake, Plaintiff was placed in administrative segregation, was found guilty at a disciplinary hearing, and his "security" was raised to "close." Close security means he is in a facility with more violent inmates, can only visit the law library once per week, has more controlled movement, must be escorted to meals,

and cannot go on the "big yard" unless he is participating in sports. (Doc. 43-1, Plaintiff Depo., pp. 44-45).

Based on the evidence before the Court, the undersigned finds that a reasonable juror could find that a person of ordinary firmness would likely be deterred from filing grievances based on this allegedly retaliatory conduct by Defendants Anderson, Barber, Sealy, and Westlake.

However, a reasonable juror could not find that a person of ordinary firmness would likely be deterred from filing grievances as a result of Defendant Allen's allegedly retaliatory conduct. The Court notes that, while Defendant Allen placed Plaintiff in administrative segregation, he never filed disciplinary charges against Plaintiff. (Doc. 43-1, Plaintiff's Depo., p. 50).

The testimony of Plaintiff and the affidavit of inmate Rodriguez indicate that Plaintiff told Defendant Allen (1) about the grievance that he filed against Defendant Anderson, and (2) that Plaintiff did not feel comfortable being searched by Defendant Anderson. (Doc. 43-1, Plaintiff Depo., pp. 49-50); (Doc. 48-7). Both Plaintiff and inmate Rodriguez maintain that Defendant Allen subsequently got angry and ordered that Plaintiff be placed in segregation. (Doc. 43-1, Plaintiff Depo., p. 49); (Doc. 48-7). Plaintiff also testified that Defendant Allen told Plaintiff, "[f]ile another grievance. I don't care. Lock him down for insubordination." (Doc. 43-1, Plaintiff's Depo., p. 50). Plaintiff then filed thirteen more grievances at VSP.

Thus, it does not appear that a person of ordinary firmness would be deterred from filing grievances as a result of Defendant Allen's conduct, and for this reason Defendants' Motion for Summary Judgment should be **GRANTED** as to Defendant Allen.[5]

---

[5] Plaintiff has also failed to satisfy the third element of the retaliation standard as to Defendant Allen. Defendant Allen states that he would not have retaliated against an inmate for filing a grievance, a common occurrence, and

### ii. Third Element: Causal Connection

Defendants also argue that Plaintiff did not establish a causal link between filing a grievance against Defendant Anderson and his subsequent treatment by Defendants. (Doc. 43-9, pp. 9-10); *Bennett*, 423 F.3d at 1250. Defendants appear to concede in their Reply that the witness statement of Kevin McKay creates an issue of fact as to Defendants Anderson, Barber, Sealy, and Westlake, but maintain that the witness statement cannot be properly considered in deciding a motion for summary judgment on the grounds that the statement is hearsay and does not meet the requirements to be considered an affidavit or declaration. (Doc. 56, p. 2 n. 2).

McKay states that he heard Defendant Westlake say, "this is for writing a grievance on c.e.r.t. Officer Anderson." (Doc. 48-4, McKay Stmt., p. 2).  However, even if inmate McKay's statement is inadmissible, Plaintiff has testified to the same facts that McKay includes in his witness statement. Plaintiff testified that while Defendant Barber was pat searching Plaintiff, Defendant Westlake walked over and stood in front of Plaintiff, and Defendant Westlake gave a soap dish to Defendant Barber. (Doc. 43-1, Plaintiff Depo., pp. 34-35). He then told Plaintiff, "this is for filing that grievance on Officer Anderson." (Doc. 43-1, Plaintiff Depo., p. 35). Plaintiff also testified that Defendant Anderson was standing by the table smiling at Plaintiff while this occurred. (Doc. 43-1, Plaintiff Depo., pp. 41-42).

In *Farrow v. West*, the Eleventh Circuit granted summary judgment when the defendant submitted an affidavit stating that she never received nor had knowledge of the plaintiff's written complaints, and the plaintiff did not offer evidence to rebut this affidavit. 320 F.3d 1235, 1248-

---

that he would only place an inmate on lockdown if he had been acting insubordinate, was in the possession of contraband, or violating a rule. (Doc. 43-2, Allen Aff., ¶¶ 6-8). Plaintiff merely provides evidence that Defendant Allen "got angry" when Plaintiff complained that he did not want to be searched by Defendant Anderson. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment when the plaintiff failed to produce evidence, aside from his own conclusory allegations, that the defendant was motivated by a retaliatory animus).

49 (11th Cir. 2003). The affidavits of Defendants Barber, Sealy, and Westlake include statements that these Defendants did not know about the grievance filed by Plaintiff against Defendant Anderson at the time of the shakedown. (Doc. 43-4, Barber Aff., ¶ 13); (Doc. 45-1, Sealy Aff., ¶ 13); (Doc. 43-6, Westlake Aff., ¶ 8). However, Plaintiff testified that Defendant Westlake gave Defendant Barber a soap dish, and then told Plaintiff "this is for filing that grievance on Officer Anderson." (Doc. 43-1, Plaintiff Depo., p. 35).

While Defendants Westlake and Barber maintain that they did not know about the grievance at the time of the shakedown, Plaintiff's testimony clearly creates an issue of material fact as to whether Plaintiff established a causal connection between filing a grievance against Defendant Anderson and his subsequent treatment by Defendants Barber and Westlake. Thus, the undersigned **RECOMMENDS** that the Motion for Summary Judgment be **DENIED** as to Defendants Barber and Westlake.

Plaintiff has not, however, rebutted the evidence of Defendants Sealy and Anderson. These two Defendants also stated that they did not know of the grievance against Defendant Anderson at the time of the shakedown. The evidence does not show any causal connection as to Defendant Sealy, as the evidence merely shows that Defendant Sealy was present during the shakedown.

As to Defendant Anderson, Plaintiff testified that Defendant Anderson smiled at Plaintiff while Defendants Barber and Westlake gave Plaintiff the contraband soap dish. However, even if Defendant Anderson knew of the grievance at the time of the shakedown, a smile from a distance is not enough to create a causal connection as to this Defendant. *See Casey v. Wal-Mart Stores, Inc.*, 8 F. Supp. 2d 1330, 1339 (N.D. Fla. 1998) (holding that the plaintiff could not show a causal connection between her termination and protected activity, despite alleging that the store director would stare at her and give her dirty looks after she reported harassment). Defendant

Anderson stated in his affidavit that he did not plant the cell phone in the bar of soap and then order that the soap be planted on Plaintiff, and that he does not have the authority to determine when a shakedown occurs. (Doc. 43-3, Anderson Aff., ¶¶ 15, 17). Plaintiff has not offered evidence, aside from testimony about a smile, to show that Defendant Anderson acted with improper motive on April 2, 2014.

Thus, Plaintiff has failed to show a causal connection between his grievance against Defendant Anderson and subsequent treatment by Defendants Anderson and Sealy. Therefore, the undersigned **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED** as to Defendants Anderson and Sealy.

## B. PLRA

Under the PLRA, "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). The Eleventh Circuit held in *Al-Amin v. Smith*, that "punitive damages are precluded under the PLRA in the absence of physical injury." 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiff failed to meet § 1997e(e)'s physical injury requirement. Moreover, at least one published opinion has affirmatively stated that, according to the law of our Circuit, the PLRA precludes the recovery of punitive damages in the absence of physical injury.") (internal citations omitted).

In *Brooks v. Warden*, the Eleventh Circuit held as follows:

> an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury. However,

16

> we have never had the opportunity in a published opinion to settle
> the availability of nominal damages under the PLRA. We do today,
> and we hold that nothing in § 1997e(e) prevents a prisoner from
> recovering *nominal* damages for a constitutional violation without
> a showing of physical injury.

800 F.3d 1295, 1307-08 (11th Cir. 2015) (internal citations omitted).

Here, Plaintiff seeks declaratory judgment, "nominal relief," and money damages in his Recast Complaint. (Doc. 8). While Plaintiff argues that he has been improperly assigned to segregated housing, it does not appear that Plaintiff suffered a physical injury that is more than *de minimis* as a result of Defendants' alleged retaliation. *See Al-Amin*, 637 F.3d at (affirming the district court's granting of the defendants' motion in limine precluding the plaintiff from offering evidence to support an award of punitive damages when the plaintiff alleged only a first amendment injury and no accompanying physical injury). As Plaintiff did not suffer a physical injury that was more than *de minimis*, he is unable to recover for compensatory or punitive damages arising out of the mental and emotional harm he may have suffered as a result of this alleged retaliation.

However, Plaintiff asks for nominal relief and declaratory judgment in his Recast Complaint. *Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009) (holding that the district court erred when it did not consider whether the plaintiff's *pro se* complaint should have been liberally construed to request nominal damages, especially in light of the plaintiff's request for both monetary and injunctive relief). In accordance with the Eleventh Circuit's ruling in *Brooks*, Plaintiff is not barred from recovering nominal damages for this alleged First Amendment violation.

## C. **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity. (Doc. 43-9). "The doctrine

17

of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity allows "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002). "A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

Here, the facts are clear that the Defendants were acting within their discretionary authority. Furthermore, the undersigned has found an issue of material fact as to whether Plaintiff suffered a constitutional violation at the hands of Defendants Barber and Westlake. The Court must now consider whether the law was clearly established.

"[T]here need not be a case 'on all fours,' with materially identical facts, before we will allow suits against [officials]." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Plaintiff presented evidence that Defendants Barber and Westlake planted contraband on Plaintiff in retaliation for his filing of a grievance against Defendant Anderson. The law is clear

18

that the filing of grievances is a constitutionally protected act, and the First Amendment right of prisoners to be free from retaliation for filing grievances was clearly established at the time of this conduct. It seems clear that prison guards would be on notice that planting contraband on an inmate in retaliation for engaging in a constitutionally protected act would violate that inmate's constitutional rights. At this stage, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment claim.

## VI. Conclusion

The undersigned recommends that Defendants' Motion for Summary Judgment (Doc. 43) be **GRANTED-IN-PART AND DENIED-IN-PART**.  Defendants Allen, Anderson, and Sealy should be granted summary judgment in their favor. Defendants Barber and Westlake are not entitled to summary judgment, and Plaintiff may pursue a claim for nominal damages against these two Defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the district judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 26th day of May, 2016.

s/ ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE