**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**DEMETRUIS DELFON CARTER**,

    Plaintiff,

v.                                         7:15-CV-13-HL-TQL

**Warden MARTY ALLEN,** *et al.*,

    Defendants.

**ORDER**

This matter is before the Court on the Recommendation of United States Magistrate Judge Thomas Q. Langstaff (Doc. 59), entered on May 26, 2016, in which he recommends that Defendants' Motion for Summary Judgment (Doc. 43) be granted in part and denied in part. Specifically, he recommends that Defendants' motion be granted as to Plaintiff's claims against Defendants Allen, Anderson, and Sealy and denied as to Plaintiff's claims against Defendants Barber and Westlake. Plaintiff filed an objection (Doc. 62), and the Court has made a *de novo* review of the Recommendation. For the reasons discussed herein, the Recommendation is adopted in part and rejected in part.

**I.    FACTUAL BACKGROUND**

Plaintiff Demetruis Delfon Carter is an inmate housed at Valdosta State Prison ("VSP"). This lawsuit arises out of a series of events following Plaintiff's filing of a grievance against Defendant Rantavious Anderson for sexual

harassment.[1]  Defendant Marty Allen has been the warden at VSP since February 1, 2013.  On April 2, 2014, Defendant Tyler Westlake was an assistant supervisor over the Correctional Emergency Response Team ("CERT") at VSP.  Defendants Rantavious Anderson, John Barber, and Gregory Sealy are members of the CERT team at VSP.

### A.     March 27, 2014 Incident

On March 27, 2014, Defendants Westlake and Anderson conducted a pat search of Plaintiff, during which Defendant Anderson allegedly "grabbed [Plaintiff's] buttocks" in a sexual manner.  (Doc. 43-1, Plaintiff Dep., p. 20; Doc. 43-3, Anderson Aff., ¶ 5).  In response to the contact, Plaintiff told Defendant Anderson he was going to file a grievance, which caused Defendant Anderson to get "angry" and place Plaintiff in administrative segregation.  (Doc. 43-1, Plaintiff Dep., pp. 28–29).  Defendant Anderson contests Plaintiff's version of the incident, claiming instead that Plaintiff refused to let Defendant Anderson conduct the pat search, that Defendant Anderson conducted the pat search anyway, and that he then placed Plaintiff in administrative segregation for insubordination. (Doc. 43-3, Anderson Aff., ¶ 4).

Plaintiff filed a grievance against Defendant Anderson, which was referred to the Internal Investigations Unit on April 1, 2014.  (Doc. 1-1, p. 5).  According to Defendant Anderson, he did not know that the grievance had been filed until he

---

[1] The facts underlying this grievance are set out in subsection A, "March 27, 2014 Incident."

was asked to provide a response to the grievance on April 4, 2014. (Doc. 43-3, Anderson Aff., ¶ 8). The split shift supervisor at VSP, Carlos Jones, stated that it takes between two and three days for an officer to receive a request for an answer following the filing of a grievance against him, and there is "no way that Officer Anderson would have known about the grievance the very next day at 8:00 AM . . . ." (Doc. 43-7, Jones Aff., ¶¶ 2, 6–7).

### B. April 2, 2014 Incident

On April 2, 2014, Defendants Barber and Sealy conducted a shakedown of Dormitory E, where Plaintiff was housed. (Doc. 43-4, Barber Aff., ¶ 3; Doc. 45-1, Sealy Aff., ¶ 3). Defendants Barber and Sealy searched Plaintiff's cell and pat searched Plaintiff during the course of the shakedown. (Doc. 43-4, Barber Aff., ¶¶ 5–6; Doc. 45-1, Sealy Aff., ¶¶ 5–6). It is undisputed that Defendant Westlake was present and that he "stood or sat" near a table in or around Plaintiff's cell while Defendants Barber and Sealy searched Plaintiff's cell. (Doc. 43-6, Westlake Aff., ¶ 4).

Plaintiff alleges that Defendant Westlake stood at a table with Defendant Anderson while he was being pat searched. (Doc. 43-1, Plaintiff Depo., p. 34). At some point, Defendant Westlake walked over and gave Defendant Barber a soap dish that Defendant Westlake had in his vest. (Doc. 43-1, Plaintiff Depo., pp. 34–35). As he was doing this, Defendant Westlake told Plaintiff, "this is for filing that grievance on Officer Anderson." (Doc. 43-1, Plaintiff Depo., p. 35). Defendant Barber then broke open the soap dish, broke the soap in half, and

found a cell phone. (Doc. 43-1, Plaintiff Depo., p. 35). Defendant Anderson looked on and smiled at Plaintiff. (Doc. 43-1, Plaintiff Depo., pp. 41–42).

Defendants' version of this shakedown differs from Plaintiff's version. Defendant Barber claims that, during the search, he noticed Plaintiff was carrying a bag with him to the shower. (Doc. 43-4, Barber Aff., ¶ 6). Defendant Barber searched Plaintiff's bag with a metal wand, which "went off" over Plaintiff's soap dish. (Doc. 43-4, Barber Aff., ¶ 8; Doc. 45-1, Sealy Aff., ¶ 8). Defendant Barber opened the soap dish and found a cell phone hidden inside of the soap. (Doc. 43-4, Barber Aff., ¶ 9; Doc. 45-1, Sealy Aff., ¶ 9). Defendants Barber, Sealy, Anderson, and Westlake deny knowing at the time of the shakedown that Plaintiff had filed a grievance against Defendant Anderson. These Defendants also deny planting the cell phone in the soap.

Because cell phones are considered contraband, a disciplinary report was written against Plaintiff for "Possession of a Cell Phone." (Doc. 43-3, Anderson Aff., ¶¶ 12–13). Plaintiff's security was raised to "close," which means he is in a close security facility with more violent inmates, can attend the law library only once per week, has more controlled movements with escorts, and cannot go on the "big yard" unless he is participating in sports. (Doc. 43-1, Plaintiff Depo., pp. 44–46).

C.   **July 21, 2014 Incident**

On July 21, 2014, Defendants Allen and Anderson were inspecting Plaintiff's dorm. (Doc. 43-1, Plaintiff Depo., p. 49). Defendant Allen ordered

4

Defendant Anderson to pat search Plaintiff's "whole top range." (Doc. 43-1, Plaintiff Depo., p. 49). Although Plaintiff allowed Defendant Anderson to pat search him, Plaintiff afterward revealed to Defendant Allen that he had previously filed a grievance against Defendant Anderson and that he did not feel comfortable with Defendant Anderson touching him. (Doc. 43-1, Plaintiff Depo., pp. 49–50). According to Plaintiff and the affidavit of inmate Julio Rodriguez, Defendant Allen "got angry and ordered [Plaintiff] placed in segregation," although he did not file disciplinary charges against Plaintiff. (Doc. 43-1, Plaintiff Depo., p. 49; Doc 48-7, Rodriguez Aff.). Defendant Allen does not recall this incident. (Doc. 43-2, Allen Aff.).

## II.   RECOMMENDATION

Plaintiff, proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 on January 30, 2015. (Doc. 1). Plaintiff asserts that Defendants retaliated against him for filing the initial grievance against Defendant Anderson, in violation of his First Amendment rights. Defendants filed this Motion for Summary Judgment on January 25, 2016 (Doc. 43), to which Plaintiff responded (Docs. 44, 48) and Defendants replied (Doc. 56). Defendants argue that they are entitled to summary judgment because: (A) Plaintiff cannot establish a First Amendment violation; (B) Plaintiff is barred from recovering compensatory or punitive damages; and (C) Defendants are entitled to qualified immunity.

### A.    First Amendment Violation

In order to state a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must first establish that his speech was constitutionally protected. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The Parties concede that the filing of a grievance is constitutionally protected speech; thus, Plaintiff has satisfied the first element of his § 1983 claims against all Defendants.

Plaintiff must next establish that Defendants' retaliatory conduct adversely affected his protected speech. Bennett, 423 F.3d at 1250. The Magistrate Court concluded that "a reasonable juror could find that a person of ordinary firmness would likely be deterred from filing grievances" based on the allegedly retaliatory conduct of Defendants Anderson, Barber, Sealy, and Westlake. (Doc. 59, p. 13). However, "a reasonable juror could not find that a person of ordinary firmness would likely be deterred from filing grievances" as a result of Defendant Allen's allegedly retaliatory conduct. (Doc. 59, p. 13). Thus, summary judgment was recommended in favor of Defendant Allen.

Finally, Plaintiff must establish a causal connection between Defendants' retaliatory actions and the adverse effect on Plaintiff's speech. Bennett, 423 F.3d at 1250. The Magistrate Court concluded that an issue of material fact remained as to whether there was a causal connection between Plaintiff filing a grievance against Defendant Anderson and Defendants Barber and Westlake planting the contraband cell phone on Plaintiff. Thus, the court recommended denying

6

summary judgment as to Defendants Barber and Westlake. However, the court recommended granting summary judgment in favor of Defendants Sealy and Anderson, because Plaintiff failed to adequately rebut evidence that these Defendants did not know of the grievance against Defendant Anderson at the time of the shakedown. The Recommendation explains that "the evidence merely shows that Defendant Sealy was present during the shakedown." (Doc. 59, p. 15). As to Defendant Anderson, "a smile from a distance is not enough to create a causal connection as to [Defendant Anderson]." (Doc. 59, p. 15).

### B.     Compensatory and Punitive Damages

An incarcerated plaintiff cannot recover compensatory or punitive damages for constitutional violations unless he can demonstrate more than a *de minimis* physical injury. Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015). Because Plaintiff has not alleged a physical injury, the Magistrate Court concluded that Plaintiff is limited to nominal damages for his surviving claims.

### C.     Qualified Immunity

A public official is only entitled to qualified immunity if (1) he was acting within the scope of his discretionary authority when the allegedly wrongful conduct occurred, and (2) his conduct did not violate a plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. The Magistrate Court concluded that Defendants Barber and Westlake, the only Defendants remaining after the court's analysis of Plaintiff's First Amendment retaliation claim, are not entitled to qualified immunity. While

they were acting within their discretionary authority at all times relevant to this action, the law is clear that the filing of a grievance is a constitutionally protected act.  The court concluded that a question of fact remains as to whether these Defendants were on notice that planting contraband on an inmate in retaliation for engaging in a constitutionally protected act would violate that inmate's constitutional rights.

### III.     PLAINTIFF'S OBJECTIONS

#### A.     First Amendment Violation

Plaintiff objects to the Magistrate Court's recommendation that summary judgment be granted in favor of Defendants Allen, Sealy, and Anderson.  With respect to Defendant Allen, Plaintiff contends that transfer to administrative segregation is an adverse action.  Because Defendant Allen committed an adverse act, and because he knew at the time he ordered that Plaintiff be placed in segregation that Plaintiff had filed a grievance against Defendant Anderson, Plaintiff argues that a question of fact remains as to whether this constitutes retaliation in violation of the First Amendment.

With respect to Defendant Anderson, Plaintiff points out that he conversed with Defendant Westlake immediately before Defendant Westlake walked over to Plaintiff and allegedly planted the contraband.  Further, Defendant Anderson smiled at Plaintiff as Defendant Westlake planted the contraband.  Plaintiff argues that this smile is sufficient to create a causal connection between the filing of the grievance and the planting of the contraband.  Plaintiff contends that

Defendant Sealy is not entitled to summary judgment because he failed to report the conduct of Defendants Barber and Westlake after witnessing it.

### B. Compensatory and Punitive Damages

In his Objection, Plaintiff maintains that he is entitled to punitive damages based on Defendants' conduct, but he makes no additional argument on this point.

## IV. DISCUSSION

### A. First Amendment Violation

#### 1. Defendants Sealy, Barber, and Westlake

Upon review, the Recommendation is accepted and adopted with respect to these three Defendants. Defendants' Motion for Summary Judgment is **GRANTED** as to Defendant Sealy and **DENIED** as to Defendants Barber and Westlake.

#### 2. Defendant Anderson

The Court disagrees with the Magistrate Court's recommendation as to Defendant Anderson. The lower court found no causal connection between Plaintiff's grievance against Defendant Anderson and the planting of the contraband on Plaintiff, because there was no evidence that Defendant Anderson knew that the grievance had been filed and "a smile from a distance is not enough to create a causal connection." In support of this reasoning, the

9

Recommendation cited Casey v. Wal-Mart Stores, Inc.[2], which found no causal connection between the plaintiff's termination and her report of harassment when she alleged that the store director would stare at her and give her dirty looks.

In addition to the fact that Casey is non-binding on this Court, the facts of this case are distinguishable in a number of ways. First, the plaintiff in Casey alleged retaliation in the context of Title VII, not § 1983. Second, the retaliation claim in Casey is factually dissimilar from the retaliation claim in this case. In reaching its decision, the court in Casey reasoned that the plaintiff had "not cited to any authority which construe[d] adverse employment action to include 'stares and dirty looks.'" 8 F. Supp. 2d at 1339.

Here, Plaintiff is not asking the Court to hold that Defendant Anderson's smile alone supports a cause of action for retaliation. Rather, Plaintiff is asking the Court to take into consideration the context of Defendant Anderson's smile—immediately following a conversation between Defendant Anderson and Defendant Westlake and while Defendant Westlake was allegedly planting contraband in Plaintiff's shower bag "for filing that grievance on Officer Anderson." The Court finds that Plaintiff's testimony creates an issue of material fact as to whether Defendant Anderson's conduct constitutes retaliation. For these reasons, the Court rejects this portion of the Magistrate Court's Recommendation, and **DENIES** the Motion for Summary Judgment as to Defendant Anderson.

---

[2] 8 F. Supp. 2d 1330 (N.D. Fla. 1998).

### 3. Defendant Allen

The Court also disagrees with the Magistrate Court's Recommendation as to Defendant Allen. Plaintiff alleges that Defendant Allen transferred him to administrative segregation after Plaintiff told Defendant Allen that he did not feel comfortable having Defendant Anderson pat him down and that he had previously filed a grievance against Defendant Anderson for sexual harassment. The Magistrate Court recommended that summary judgment be granted in favor of Defendant Allen because "while [he] placed Plaintiff in administrative segregation, he never filed disciplinary charges against Plaintiff." (Doc. 59, p. 13). Because the segregation was administrative, rather than punitive, the Magistrate Court doubted that a person of ordinary firmness would be deterred from filing a grievance as a result of the segregation.[3]

This Court disagrees with the Magistrate Court's assessment. Although Plaintiff did not appear deterred by Defendant Allen placing him in administrative segregation, a person of ordinary firmness likely would be deterred under the circumstances. After all, Defendant Allen's decision to place Plaintiff in administrative segregation immediately followed Plaintiff explaining that he had previously filed a grievance against Defendant Anderson. A recent Eleventh Circuit decision, which dealt with a plaintiff's allegation that his First Amendment

---

[3] The test for whether conduct constitutes an "adverse action" with respect to a § 1983 claim based on First Amendment rights is whether the "defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

11

rights were violated when he was subjected to disciplinary[4] confinement for filing a grievance, noted in dicta that "[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." Alvarez v. Secretary, Florida Dept. of Corrections, No. 15—10506, 2016 WL 1238185, at *6 (11th Cir. March 30, 2016) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999)). Plaintiff's placement in administrative segregation constitutes an adverse action, and the Recommendation is thus rejected on this point. The Motion for Summary Judgment is **DENIED** as to Defendant Allen.

### B.     Compensatory and Punitive Damages

Upon review, the Recommendation is accepted and adopted with respect to the Magistrate Court's finding that Plaintiff is not entitled to recover compensatory or punitive damages. Plaintiff has not alleged more than a *de minimis* injury, and thus may only recover nominal damages.

### C.     Qualified Immunity

The Recommendation's finding that Defendants Barber and Westlake are not entitled to qualified immunity on Plaintiff's First Amendment claim is accepted and adopted. The reasoning of the Magistrate Court as to the potential immunity of Defendants Barber and Westlake also applies to Defendants Allen and Anderson, whose immunity was not addressed in the Recommendation. Defendants Allen and Anderson were acting within their discretionary authority at

---

[4] The Court acknowledges that the segregation Plaintiff was subjected to was "administrative" in nature, as opposed to disciplinary.

12

the time of their allegedly unconstitutional conduct.  However, Plaintiff's right to file a grievance without retaliation was clearly established.  A material question of fact remains as to whether these Defendants actually committed the retaliatory acts that Plaintiff alleges, and whether they were on notice that their retaliatory actions would violate Plaintiff's constitutional rights.

**V.    CONCLUSION**

For the foregoing reasons, the Recommendation (Doc. 59) is adopted in part and rejected in part.  Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED** with respect to Defendant Sealy and **DENIED** with respect to Defendants Anderson, Allen, Barber, and Westlake.  Plaintiff's potential recovery is limited to nominal damages.  The remaining Defendants are not entitled to qualified immunity at this stage.

**SO ORDERED**, this the 2nd day of August, 2016.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

les